**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

David Zaire,                                                              No. 9:03-CV-25 (NAM/DEP)

                Plaintiff,

    v.                                                                                        **MEMORANDUM**
                                                                      **AND ORDER**

M. Coryer, Correction Officer; M. Vincent, Correction Officer; D. Armitage, Correction Lieutenant; and R. Minogue, Correction Captain,

                Defendants.

---

This matter is before the Court[1] on Defendants' Motion for Summary Judgment. For the reasons that follow, the Motion is granted.

**BACKGROUND**

Plaintiff David Zaire is an inmate in the custody of the New York State Department of Correctional Services ("DOCS"). Defendants are employees of DOCS working at Clinton Correctional Facility ("Clinton") in New York. Plaintiff was confined at Clinton until October 4, 2002, when he was transferred to Bare Hill Correctional Facility ("Bare Hill").

On September 19, 2002, Plaintiff was one of approximately forty-eight inmates using the shower facilities in Clinton's main bathhouse. (Artus Aff. Ex. B at 1.) Plaintiff was

---

[1] This case was originally assigned to the Hon. Norman A. Mondue. Pursuant to an inter-circuit assignment under 28 U.S.C. § 294(d), the undersigned is now the Judge of record in this case.

wearing either a towel or towel-like covering around his waist while he showered, pursuant to a tenet of his Islamic faith that requires men to be covered from navel to knees in public. (Compl. at 3.)  Plaintiff had regularly worn this towel while showering at the gymnasium shower facilities since his arrival at Clinton in May 2002.  (Artus Aff. Ex. H at 6.)

On the evening of September 19, however, Defendant Corrections Officer M. Coryer ordered Plaintiff to remove the towel, stating that Clinton facility policy allowed inmates to either shower "naked" or in "boxers or briefs."  (Compl. at 3; Artus Aff. Ex. B at 1.)  Coryer apparently believed that "boxers, briefs, or nothing" was an accurate statement of the prison's policy on shower attire, based on an unpublished "to-from" document dated March 24, 1993.  (See Artus Aff. Ex. B at 1.)  The 1993 "to-from" document, however, had not been made available to inmates and therefore did not constitute a valid basis for disciplinary action.  See N.Y. Correct. Law § 138 (1)–(2) (McKinney) (stating that "[a]ll institutional rules and regulations defining and prohibiting inmates misconduct shall be published and posted in prominent locations within the institution," and "[a]ll inmates shall be provided with written copies of these rules and regulations upon admission to the institution"); see also id. § 138(5) ("[n]o inmate shall be disciplined except for a violation of a published and posted written rule or regulation, a copy of which has been provided the inmate").

Although the "to-from" document was not an enforceable prison regulation, Clinton did have a published and enforceable regulation regarding shower attire at the time of the September 19 incident.  Clinton's published Facility Operating Manual Procedures No. 458, § VI(C)(2) (hereinafter "FOMP 458") states that "[a]n inmate is allowed to wear a clean

2

towel around his waist when taking a shower provided he washes his entire body or one pair of underwear, State issued briefs or boxers [sic]. Gym shorts or provocative style briefs are not allowed." (Artus Aff. Ex. C at 4.)

Although apparently unfamiliar with FOMP 458, Plaintiff was aware that Muslim inmates were permitted to "cover [them]selves" or "wear something in the shower." (Id. Ex. H at 5.) Plaintiff therefore refused to remove the towel when ordered to do so, stating that he had no boxers or briefs to put on. He asked Coryer his name and what prison policy governed appropriate shower attire. Several minutes later Plaintiff left the shower area and got dressed. Coryer subsequently asked to see Plaintiff's identification card, and then escorted Plaintiff back to his cell. (Id. Ex. B at 1.)

Coryer then filed an inmate misbehavior report stating that Plaintiff had caused a disturbance and refused to follow a direct order. Plaintiff was confined to his cell pending a Tier II disciplinary hearing on September 25, 2002. Defendant Lieutenant Armitage, who presided at the Tier II hearing, found Plaintiff not guilty of creating a disturbance but guilty of violating a direct order. Plaintiff was penalized and confined to his cell for seven days. He also lost his telephone privileges. Armitage based his decision on the unpublished 1993 "to-from" memo, which states that underwear is permitted in the showers but makes no reference to towels. (See id. Ex. B.; see generally id. Ex. H.)

Plaintiff appealed the Tier II decision on September 26, 2002. Defendant Captain Minogue affirmed the decision on September 30, 2002, without explanation. There is no

indication that Armitage, Minogue, or Plaintiff were aware of the contents of FOMP 458 throughout the entire course of Plaintiff's disciplinary hearing.

On September 26, 2002, Plaintiff filed an inmate grievance complaint regarding the bathhouse incident. The Inmate Grievance Review Committee (IGRC) issued a response on September 30, 2002, recommending that the bathhouse staff adhere to FOMP 458, which permits inmates to wear towels in the shower. (Id. Ex. C.)

The next day, on October 1, 2002, Defendant Corrections Officer M. Vincent conducted a search of Plaintiff's cell and confiscated Plaintiff's showering towel as an altered item and contraband. According to Vincent, the towel had been "made into a skirt using state items from Tailor Shop 3 (elastic and buttons or snaps)." (Id. Ex. D.) Plaintiff was an industrial worker in Tailor Shop 3 at the time of the bathhouse incident and the cell search.

Plaintiff brings claims under 42 U.S.C. § 1983, arguing that Defendants violated his constitutional rights. He asks for $5,000 in punitive damages, as well as a judgment declaring that Defendants' actions were "vindictive, retaliatory and constituted religious indifference, discrimination and persecution." (Compl. at 6.)

**DISCUSSION**

Plaintiff claims that Defendants' actions violated his Fourteenth Amendment due process and equal protection rights. He also argues that Defendants' actions violate his First Amendment right to the free exercise of religion. Finally, Plaintiff submits that Defendants

retaliated against him for appealing a disciplinary action and filing grievance complaints with prison officials.

**A.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must resolve ambiguities and draw all reasonable inferences in favor of the nonmoving party. Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). However, as the United States Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quotations omitted).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Id. at 323. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Pro se complaints must be construed liberally. See Branham v. Meachum, 77 F.3d 626, 628-29 (2d Cir. 1996); Estelle v. Gamble, 429 U.S. 97, 106 (1976).

**B.     Fourteenth Amendment**

    1.     Due Process

Plaintiff contends that Defendants denied both his procedural and substantive due process rights because Defendants applied a non-binding prison rule when ordering him to remove his towel while showering in violation of his religious beliefs. In particular, it appears that Plaintiff contends that Defendants violated his substantive due process rights by ordering Plaintiff to remove his towel while showering, and that Defendants violated his procedural due process rights by applying a non-binding prison regulation.

Substantive due process protects an individual from state action that is arbitrary, conscience-shocking, or constitutionally oppressive. See Lowrance v. Achtyl, 20 F.3d 529, 537 (2d Cir. 1994) (internal citations omitted). However, it does not protect against action that is "incorrect or ill-advised." Id. (quoting Bishop v. Wood, 426 U.S. 341, 350 (1976)). Assuming for purposes of this Motion that Plaintiff has a cognizable liberty interest in wearing a towel while showering, the Court finds that Plaintiff's substantive due process claim nonetheless fails. Defendants' actions in ordering Plaintiff to remove his towel on one isolated occasion cannot be reasonably found to have been arbitrary, conscience shocking, or oppressive. See id. Indeed, both Plaintiff and Defendants were seemingly unaware of the specific details in the governing prison regulation. Although in retrospect Defendants' actions may have been incorrect or ill-advised, this does not constitute a deprivation of

substantive due process.² See id.; see also Howard v. Pierce, 981 F. Supp. 190, 194 (W.D.N.Y. 1997). Plaintiff's claim on this point fails.

Plaintiff claims that he was denied procedural due process because Defendants inappropriately applied a non-binding prison regulation. Indeed, the governing prison regulation permits a prisoner to wear a towel while showering. Procedural due process requires Plaintiff to prove that the state has created a liberty interest and that the process due was denied. See Wright v. Coughlin, 132 F.3d 133, 136 (2d. Cir. 1998). However, the mere existence of a state or prison regulation does not necessarily create a protected liberty interest for prisoners. See Sandin v. Conner, 515 U.S. 472, 486 (1995). In fact, New York law "is settled that the failure to follow a DOCS directive or prison regulation does not give rise to a federal constitutional claim." Rivera v. Wohlrab, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002). Thus, the alleged violation of a corrections regulation creates no due process interest. See Warburton v. Underwood, 2 F. Supp. 2d 306, 315 (W.D.N.Y. 1998); see also Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (a violation of state law does not necessarily constitute a constitutional violation). Accordingly, because Plaintiff's claim does not amount to a violation of constitutional due process standards, his procedural due process claim fails.

---

² Furthermore, the Court notes that Plaintiff refused to remove his towel in response to the direct order, and rather left the shower area to appropriately cover himself. Consequently, Plaintiff did not disobey his religious tenet.

2.  Equal Protection

In addition to setting forth his due process allegations, Plaintiff also includes an allegation that Defendants' actions violated his equal protection rights. To prevail, Plaintiff must demonstrate that he was treated differently than similarly situated individuals, and that Defendants purposefully discriminated against him. See Allen v. Cuomo, 100 F.3d 253, 260-61, n.1 (2d. Cir. 1996). Viewing the evidence in the light most favorable to Plaintiff, as the Court must do, Plaintiff's claims are without merit. There is no evidence that Defendants treated other prisoners differently than Plaintiff, nor is there any evidence that Defendants purposefully discriminated against Plaintiff because of his religion. Therefore, Plaintiff's equal protection claim fails.

**C.   First Amendment**

Plaintiff also contends that Defendants violated his First Amendment right to the free exercise of religion by directly ordering Plaintiff to remove his towel during a communal shower, in direct contravention to both his religious beliefs and prison regulations. Plaintiff does not challenge the validity of the underlying prison regulation that permits Plaintiff to wear a towel while showering, but rather Plaintiff challenges Defendants' actions because it contradicted these governing regulations.

Although prisoners are afforded some constitutional protections, including the right to the free exercise of religion, these protections must be balanced against the interests of prison officials and their administration of the penal system. See Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003). Thus, free exercise claims by prisoners are evaluated under a

"reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." Id. (citations omitted). Plaintiff must demonstrate that the beliefs he possesses are sincerely held and religious in nature. Id. The Court then looks to whether Plaintiff's right to the free exercise of his religion was burdened. If the right was burdened, the Court must then determine whether legitimate, penological objectives justify the burden. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349-50 (1987); Boomer v. Irvin, 963 F. Supp. 227, 231 (W.D.N.Y. 1997).

Defendants do not dispute that Plaintiff's religious beliefs require that he guard his modesty while showering in the presence of others. Prison regulations permit prisoners to cover themselves while showering. However, Defendants dispute that Plaintiff suffered a substantial burden on the free exercise of his religion as a result of this isolated incident. A substantial burden occurs when an inmate is forced to modify his behavior and violate his beliefs in order to accord with prison policy. Jolly v. Coughlin, 76 F.3d 468, 477 (2d. Cir. 1996). However, a mere inconvenience does not qualify as a substantial burden. See Boomer, 963 F. Supp. at 230 (citing Graham v. Comm'r, 822 F.2d 844, 851 (9th Cir. 1987)).

Plaintiff does not contend that the prison employs an unconstitutional procedure or policy, but rather that Defendants failed to apply the proper policy on this particular occasion. Although Coryer directly ordered Plaintiff to remove his towel in the communal shower, the Court does not find that this direct order constituted a substantial burden on Plaintiff's right to the free exercise of religion. Coryer asked Plaintiff to remove his towel or leave the shower. (See Compl. at 3.) Plaintiff eventually left the communal shower and

put his clothes back on.[3]  Thus, Plaintiff's claim does not constitute a substantial burden on the free exercise of his religion.  See e.g., Cancel v. Mazzuca, 205 F. Supp. 2d 128, 142 (S.D.N.Y. 2002) (no substantial burden where prisoner prevented from attending religious service on one occasion).[4]  Therefore, Plaintiff's free exercise claim fails.

**D.     Retaliation**

   1.     Exhaustion of Remedies

Defendants argue that Plaintiff has not exhausted his administrative remedies with respect to his retaliation claim.  The Prison Litigation Reform Act ("PLRA") states that "no action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. §1997e(a).  The Supreme Court has held that the PLRA's exhaustion requirement applies to all claims brought by prison inmates pursuant to § 1983.  Porter v. Nussle, 534 U.S. 516, 524 (2002).  To comply with the PLRA's exhaustion requirement, inmates incarcerated in New York must: (1) make a grievance to the Inmate Grievance Resolution Committee ("IGRC"); (2) appeal to the Superintendent; and

---

[3] Morever, Plaintiff does not allege that prison officials have subsequently prevented him from wearing a towel in the shower.  In fact, Plaintiff testified that he has since worn a towel while showering without incident.  (See Artus Aff. Ex. H at 6.)

[4] Furthermore, other courts have determined that refusing to permit a prisoner to wear a towel in the shower serves a legitimate, penological consideration.  See e.g., Muslim v. Frame, 854 F. Supp. 1215 (E.D. Pa. 1994).  Although governing prison regulations permit prisoners to wear towels while showering, the denial in this case is nonetheless justified by penological considerations.  Moreover, Plaintiff was not restricted from alternate methods to protect his modesty, likewise negating any violation of his right to practice his religion.

(3) appeal to the Central Office Review Committee ("CORC").  N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7(a)–(c) (2000).

On October 21, 2002, Plaintiff filed an inmate grievance complaint, alleging only that Defendant Vincent conducted a retaliatory search of his cell.  IRGC denied Plaintiff's grievance on October 28, 2002.  Plaintiff appealed this grievance on December 17, 2002.  (Artus Aff. Ex. G at 5.)  CORC denied this appeal on February 26, 2003.  (Id. at 6.)  Plaintiff filed the instant Complaint on January 6, 2003.[5]  Defendants argue that Plaintiff's claim that his cell was searched in retaliation fails must be dismissed for failure to exhaust.

Indeed, the evidence indicates that, although Plaintiff had exhausted all of his appeals, the administrative remedy process was not actually finalized until February 26, 2003, when CORC issued its final denial.  Plaintiff filed his Complaint on January 6, 2003, well before this final decision.  However, the Court notes that the final ruling by CORC was untimely

---

[5] To the extent Plaintiff claims that he was removed from his prison job in retaliation for filing previous inmate grievances, this claim must be dismissed for failure to exhaust because this claim was not included in any of his inmate grievances.  Even if Plaintiff had exhausted his administrative remedies on this claim, it would nonetheless fail.  Plaintiff filed his grievance on September 26, 2002, and on October 2, 2002, Plaintiff was removed from his prison job.  However, Plaintiff was transferred on October 4, 2002, to Bare Hill, a lower security facility.  Plaintiff has no protected liberty interest in a particular job assignment.  See Gill v. Mooney, 824 F.2d 192, 194 (2d. Cir. 1987).  Further, Plaintiff does not allege that his transfer to Bare Hill was in retaliation for his filing of inmate grievances.  Rather, the evidence shows that the transfer was made in an effort to satisfy the program purposes of Plaintiff's sentence. (See Artus Aff. Ex. F.)  Thus, Plaintiff lost his prison job because he was transferred to a new, lower security facility, pursuant to a request made on September 17, 2002.  The evidence does not support an adverse act by Defendants nor any causal connection between an alleged adverse act and the filing of Plaintiff's grievance, as required to prove retaliation.

11

itself, as it was not issued within the twenty days as required by statute.  See N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7(c).

In the face of an exhaustion argument, the Court must undertake a three-party inquiry: (1) whether administrative remedies were "available" to Plaintiff; (2) whether Defendants failed to preserve an exhaustion argument by failing to raise the issue or preserve it; and (3) whether Defendants' own actions inhibited Plaintiff's exhaustion of remedies, and if so, whether the actions estopped Defendants from raising the non-exhaustion argument.  See Hemphill v. New York, 380 F.3d 680, 686 (2d. Cir. 2004).  Although the Second Circuit has not set exact parameters as to what constitutes an "available" administrative remedy, it nonetheless has alluded that administrative remedies are "unavailable" to prisoners when prison officials fail to comply with the time period prescribed by statute.  See Abney v. McGinnis, 380 F.3d 663, 668 (2d. Cir. 2004).  Under the deadlines established, CORC should decide an inmate's appeal forty-seven working days after the initial grievance was filed.  It is clear that more than forty-seven days passed from the date of the initial grievance filing on October 21, 2002, and CORC's resolution on February 26, 2003.  See Manos v. Decker, No. 03-2370, 2005 WL 545215 at *4-5 (S.D.N.Y. Mar. 7, 2005) (citing N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7 (a)–(c).  Neither party offers any factual explanation for the delay, precluding the Court from determining whether the delay is attributable to Plaintiff or to Defendants, and if attributable to Defendants, whether that delay affected the availability of Plaintiff's administrative remedies.  See id.  Therefore, viewing the evidence in the light most favorable to Plaintiff, as the Court must do, the Court finds, for purposes of this Motion,

that Plaintiff sufficiently exhausted his administrative remedies on this point.[6]  Therefore, the Court will address the merits of Plaintiff's claim that Defendants conducted a retaliatory search of his cell.

   2.   Merits

Prisoner claims of retaliation should be evaluated with skepticism and caution. Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). Retaliation claims are easily fabricated and courts evaluating such claims must avoid unwarranted intrusion into matters of prison administration. Id. To establish a prima facie case of First Amendment retaliation, Plaintiff must show: (1) that the speech or conduct at issue is protected speech or conduct; (2) that Defendants took an adverse action against Plaintiff; and (3) there is a causal connection between the protected speech or conduct and the adverse action. Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003). An act is retaliatory only if it would deter "a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." See e.g., Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004).

Defendants do not dispute that Plaintiff's grievance filings constitute protected conduct. However, the issue remains whether Defendants' alleged action – the search of Defendants' cell – constituted an adverse action that would have deterred a reasonable inmate from pursuing grievances remedies against officers. See Morales v. Mackalm, 278 F.3d 126,

---

[6] In the event that the Court has misconstrued the Second Circuit's holding in Hemphill and Abney, then Plaintiff's claims must fail for failing to exhaust his administrative remedies. However, the Court notes that such a ruling would be futile, as Plaintiff would merely re-file the same issues that are currently before the Court.

131-32 (2d Cir. 2002). In addition, the Court must evaluate whether there is a causal connection between those actions and Plaintiff's grievance filings.

The evidence reveals that on September 25, 2002, Plaintiff was found guilty of violating a direct order. On September 26, 2002, Plaintiff appealed this decision, which was affirmed on September 30, 2002. On September 26, 2002, Plaintiff also filed an inmate grievance complaint, regarding Clinton's bathhouse policies and the September 19, 2002, incident. On October 1, 2002, Defendants searched Plaintiff's cell and confiscated the towel that Plaintiff had worn in the shower. Thus, the issue is whether Defendants' search of Plaintiff's cell on October 1, 2002, constitutes an adverse action, and whether there is any causal connection between this adverse action and the filing of Plaintiff's inmate grievances.

The Supreme Court holds that prisoners do not possess a Fourth Amendment right to be free from searches and seizures. See Hudson v. Palmer, 468 U.S. 517, 525-26 (1984). "[S]ince [P]laintiff enjoys no expectation of privacy in his prison cell, prison officials may search his cell for any reason or no reason at all." Howard v. Leonardo, 845 F. Supp. 943, 948 (N.D.N.Y. 1994). Courts in the Second Circuit have determined that a search of a prisoner's cell is not an adverse action for First Amendment retaliation purposes. Id.; see also Allah v. Greiner, 2004 WL 1713811, at *4 (S.D.N.Y. July 29, 2004); Salahuddin v. Mead, 2002 WL 1968329, at *5 (S.D.N.Y. Sept. 26, 2002) (discussing cases that hold that retaliatory cell search is insufficient to support a First Amendment retaliation claim). Therefore, Plaintiff's claim that his cell was searched in retaliation for filing grievances and appeals must be denied.

**CONCLUSION**

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Clerk Doc. No. 20) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: April 11, 2005

                                              s/ Paul A. Magnuson
                                              Paul A. Magnuson
                                              United States District Court Judge